AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
3 Samsung Galaxy cell phones bearing IMEI numbers 359011830180596, 357242411552018, & 356544761259206, all in the possession of the U.S.Probation Office in Albuquerque New Mexico.

Case No. 22-MR-399

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of New Mexico, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(g)(1) and 21 U.S.C. Section 846 | Felon in possession of a firearm and conspiracy to distribute controlled substances. |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Bryan Acee, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by email and telephone *(specify reliable electronic means)*.

Date: March 9, 2022

*Judge's signature*

City and state: Albuquerque, New Mexico

John F. Robbenhaar, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The properties to be searched are the following Samsung cellular telephones:

(1) model Galaxy, IMEI 359011830180596,

(2) model Galaxy, IMEI 357242411552018, and

(3) model Galaxy, IMEI 356544761259206,

The Devices are currently maintained by the United States Probation Office in Albuquerque, New Mexico.

## **ATTACHMENT B**

1) All records on the Devices described in Attachment A, to include:
   a. any information related to firearm possession or drug distribution, including names, addresses, phone numbers, monikers, photographs, drug ledgers, drug descriptions, pay-and-owe messages, bank account numbers, or any other identifying information;
   b. cellular telephone account information, financial records pertaining to the account and any other details pertaining to the account(s) established within the Devices.
2) Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THREE SAMSUNG CELLULAR TELEPHONES, (1) MODEL GALAXY, IMEI 359011830180596, (2) MODEL GALAXY, IMEI 357242411552018, AND (3) MODEL GALAXY, IMEI 356544761259206, ALL CURRENTLY IN THE POSSESSION OF THE UNITED STATES PROBATION OFFICE IN ALBUQUERQUE, NEW MEXICO | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Bryan Acee, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in the possession of the United States Pronation Office, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been a sworn law enforcement officer for 22 years, serving as a police officer, detective, task force officer, and special agent. I have been with the FBI since 2009 and am currently assigned to the Domestic Terrorism Squad. Over the course of my career, I have specialized in the investigation of drug trafficking organizations, street and prison gangs, and violent crimes. I served as the lead FBI case agent in the government's 2010-2014 Continuing Criminal Enterprise Drug Kingpin Act case against the Juarez Cartel, which resulted in extensive seizures of controlled substances, currency, firearms, and the indictment of multiple cartel leaders. I am the lead case agent in the government's 2015-2022 gang-racketeering case against the New Mexico Syndicate (otherwise known as the "Sindicato Nuevo Mexico" or "SNM") gang, which encompasses substantial drug trafficking activities, firearm-related offenses, and numerous homicides. I

have qualified in several state courts as an expert witness on drug trafficking and possession of drugs with intent to distribute. I have qualified in federal court as an expert on drug distribution, firearms, ammunition, interstate nexus, and the Juarez Cartel. I am an FBI subject matter expert on gangs and the Juarez Cartel. I have served as an adjunct professor; law enforcement instructor; and presenter on drug and gang investigations at numerous law enforcement academies, law enforcement training seminars, and at the University of New Mexico and New Mexico State University.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

3.      The property to be searched are three Samsung cellular telephones, (1) model Galaxy, IMEI 359011830180596, (2) model Galaxy, IMEI 357242411552018, and (3) model Galaxy, IMEI 356544761259206, hereinafter the "Devices." The Devices are currently maintained by the U.S. Probation Office in Albuquerque, New Mexico. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data described in Attachment B.

## PROBABLE CAUSE

4.      In recent weeks, an FBI Confidential Human Source (CHS), who has strong ties to white power gangs and race based violent extremists, reported James CANGRO, aka: "Havic," was involved in methamphetamine distribution, firearms trafficking, auto theft, and other criminal activity in Albuquerque, New Mexico. By way of background, CANGRO is a validated member of the Soldiers of Aryan Culture (SAC), a violent white power prison gang that originated in Utah.[1] The CHS also reported CANGRO and

---

[1] The Soldiers of Aryan Culture (SAC) is a large American white supremacist prison gang. Initially based in Utah, SAC has since spread across the nation, having members in several states as well as the federal prison system. The SAC operate both inside and outside prison walls. SAC members outside of prison stay in contact with those inside correctional facilities and communicate via phone, letters, and in person visits. The gang is organized via a rank structure consisting of generals, captains, lieutenants, sergeants and soldiers. The more criminal activity that a member engages in, the more likely they'll advance to a higher rank. According to the Southern Poverty Law Center, SAC members rose through the ranks by committing violence against Hispanic and black inmates. SAC accepts new members by invitation only and prospective members are required to complete numerous violent acts. Once new members are accepted into the gang, they receive a SAC "patch" (tattoo) of the group's insignia: a swastika interwoven with an Iron Cross – sometimes accompanied by the initials "SAC". There also exist special patches for certain deeds, such as the SS bolts. Unlike most other white supremacist prison gangs such as the Aryan Brotherhood and the

Page | 2

another SAC member were involved in shipping methamphetamine and fentanyl pills to a specific location out of state. I am aware the location and identity of the other SAC; however, am omitting that information from this affidavit to preserve a related investigation. I verified the identity of the other SAC member, confirmed he was a validated member of the SAC, and learned he recently had his state parole transferred via an interstate compact from New Mexico to another state. I believe these facts authenticated the information provided by the CHS.

5. CANGRO has an extensive criminal history with prior convictions for robbery, aggravated assault and firearm related charges. CANGRO has a prior federal conviction for being in violation of 18 U.S.C. § 924(c) use of a firearm in furtherance of a drug trafficking crime, case No. 04-CR-00339-DB.

6. Based on information from the CHS, I began researching CANGRO and discovered he was dating and living with Laura Michelle CRISTY at 3413 Ross Avenue SE, #D, Albuquerque, New Mexico. Law enforcement and court records indicated CRISTY was on federal probation for human trafficking (Case No. EP-19-CR-01284-DCG-2). While researching CANGRO and CRISTY, I learned that on September 3, 2021, United States Probation Office (USPO) Search Enforcement Team officers conducted a search of the CANGRO/CRISTY residence. USPO officers made contact with CRISTY prior to the search and advised her they were coming.[2] USPO officers subsequently arrived at the location and made contact with CRISTY and CANGRO. Two Bernalillo County Sheriff's Office (BCSO) detectives were present

---

Nazi Low Riders, the SAC are strongly anti-Semitic. While many politically oriented white supremacist organizations like the Ku Klux Klan and the National Socialist Movement carry such ideologies, it is unusual for white power prison gangs to hold these views – at least in high regard. The Aryan Brotherhood, for instance, has a high-ranking lieutenant who is part Jewish, even openly sporting a Star of David tattoo. For the SAC, however, hatred towards Jewish people is rather common. The SAC code of conduct requires its members to attack known sex offenders and informants. Additionally, members are forbidden from cooperating with law enforcement. The SAC engages in a number of different illicit activities, such as: murder; assault; robbery; extortion; firearms trafficking; and drug distribution. *Sources*: Soldiers of Aryan Culture (adl.org) and FBI Safe Streets Gang Unit.

[2] I believe one or more firearms may have been removed from the premises prior to the arrival of USPO officers. My belief is based on the fact that USPO officers called ahead of their visit, CRISTY and CANGRO are convicted felons, and officers subsequently found a Glock pistol loading device, a ballistic vest, and handcuffs inside the home. Moreover, CRISTY's cell phones contained photos of a black pistol.

during the search, both of whom recorded the incident on their body worn cameras. USPO officers searched the residence and located the following contraband during the search:

    a. backpack full of THC products,

    b. $1,000 in U.S. currency,

    c. large knife in a sheath,

    d. handcuffs,

    e. a black ballistic vest with a dagger in the chest plate area,

    f. 2 glass methamphetamine pipes,

    g. anabolic steroids,

    h. Glock pistol loader,

    i. two packages of syringes,

    j. a switchblade knife,

    k. identification in the name of a third party,

    l. one Samsung Galaxy cellular telephone that contained various photos of drugs, a large quantity of currency, and a Taurus pistol.

7. During a post-Miranda interview, CANGRO told BCSO detectives the ballistic vest, knives, and handcuffs belonged to him. He initially said he had used the vest while serving as a wildland fire fighter. He later said he purchased the vest for protection because someone had shot at his vehicle.

8. This conduct was reported to the Western District of Texas, where CRISTY'S jurisdiction originates for initiation of violation proceedings, due to the violations of her supervised release. CRISTY continued to display non-compliant behavior, and in November 2021, two more cellphones were removed from her possession, following her termination from a halfway house. CRISTY was subsequently arrested and remains in custody. USPO officers seized all of the evidence items listed above and still maintain custody of them. The Devices to be searched consist of the one cellular telephone seized by USPO in

September 2021, and the two cell phones seized by USPO in November 2021. I have verified USPO officers still maintain custody of the Devices.

9.   USPO officers reviewed the contents of the Devices and related to me that they belonged to CRISTY, contained photographs of CANGRO, CRISTY, other persons, drugs, a black handgun, bulk U.S. currency, contact lists, text messages, emails, and other applications. USPO officers told me the Devices contained photos of a handgun, bulk currency, and large quantities of suspected fentanyl pills and various THC products.

10.   I know through my involvement in this and prior investigations involving gang members and drug distributors that such persons maintain the names and phone numbers of their criminal associates in their telephones. I also know that gang members/associates and drug distributors utilize text messaging and similar applications to communicate with one another. I am aware gang members/associates and drug distributors frequently utilize the telephone's camera feature to take photos of drugs, money, guns, and to include group photographs with other gang members, and those photos are stored on the telephone.

11.   The Devices are currently in the possession of the USPO and have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices were first seized by USPO officers.

## TECHNICAL TERMS

12.   Based on my training and experience, I use the following technical terms to convey the following meanings:

   m. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice

communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

n.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

o.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

p.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation

devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

13. Based on my training, experience, use, and research, I know that the Devices have capabilities that allow it to serve as a wireless telephone, digital camera, and portable media player. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used a particular device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

q. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

r. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

s. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

t. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

u. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

16. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

17.     *Manner of execution.* This warrant seeks only permission to examine a device already in law enforcement's possession, thus the execution of this warrant does not involve the physical intrusion onto a premises.

## CONCLUSION

18.     I submit that this affidavit supports probable cause to believe that the Devices contain evidence of being a felon in possession of a firearm in violation of 18 U.S.C. Section 922(g)(1) and conspiracy to distribute controlled substances in violation of 21 U.S.C. Section 846. As such, I hereby request a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Bryan Acee
FBI Special Agent


Subscribed and sworn to before me on March 9, 2022:

John F. Robbenhaar
United States Magistrate Judge
District of New Mexico